UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                              Chapter 7

      SIMON TAUB,                                      Case No. 10-49215-ess

              Debtor.
-----------------------------------------------------------x


# MEMORANDUM DECISION ON MOTION FOR
# RELIEF FROM THE AUTOMATIC STAY


Appearances:

Leo Fox, Esq.
630 Third Avenue
New York, NY 10017
  *Attorney for Simon Taub*

Katalin Pota
P.O. Box 7442
Brooklyn, NY 10150
  *Petitioning Creditor, pro se*

Chana Taub
P.O. Box 667
Brooklyn, NY 11219
  *Pro se*,  *Debtor, In re Chana Taub, Case No. 08-44210*

Christine Quigley, Esq.
SilvermanAcampora LLP
100 Jericho Quadrangle (Suite 300)
Jericho, NY 11753
  *Attorneys for Lori Lapin Jones, Chapter 11 Trustee,*
  *In re Chana Taub, Case No. 08-44210*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion for relief from the automatic stay (the "Lift Stay Motion")

by Simon Taub, the estranged husband of Chana Taub, and the alleged debtor in this involuntary

Chapter 7 case.  Mr. Taub moves for an order pursuant to 11 U.S.C. § 362(d)(1), terminating the

automatic stay to allow him and Ms. Taub to proceed to conclusion and the entry of judgment

with the matrimonial action (the "Second Divorce Action") pending in the New York State

Supreme Court, Kings County (the "Supreme Court, Kings County"), with enforcement to take

place in this Court.

## Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b)

and 157(b)(1).

## Procedural History

On September 29, 2010, Katalin Pota, as the sole petitioning creditor, filed this

involuntary petition for relief against Simon Taub under Chapter 7 of Title 11 of the United

States Code.

On October 4, 2010, Mr. Taub filed a motion to annul any automatic stay which may

exist pursuant to Section 362(d) to permit the Second Divorce Action to proceed.  Mr. Taub also

seeks retroactive relief, in order to give effect to proceedings that occurred in the Second

Divorce Action on October 4, 2010, after this involuntary bankruptcy case was commenced.

There was no written opposition filed in response to the Lift Stay Motion.

On October 7, 2010, and October 8, 2010, the Court held a hearing on the Lift Stay

Motion, at which counsel for Mr. Taub, Katalin Pota, the petitioning creditor, *pro se,* Chana

Taub, the debtor in *In re Chana Taub*, Case No. 08-44210, *pro se*,[1] and counsel for Lori Lapin Jones, Chapter 11 Trustee, appeared and were heard, evidence was received, and the Court reserved decision.

Based upon the entire record and consideration of the relevant factors, the arguments of counsel and parties, and for the reasons stated below, the Lift Stay Motion is granted as set forth below.

## Background

As this Court has observed in other contexts, the Debtor and Ms. Taub have been engaged in contentious and acrimonious litigation in the New York state courts, including two divorce actions, since 2005. *See In re Taub*, 413 B.R. 55, 58 (Bankr. E.D.N.Y. 2009). Ms. Taub commenced a divorce action against the Debtor in the Supreme Court, Kings County on June 17, 2005 (the "First Divorce Action"), and that action was dismissed after a jury trial on March 27, 2007. *Id*. Three of the four judges to whom that action was assigned recused themselves. *In re Taub*, 413 B.R. at 58-59.

Following the dismissal of the First Divorce Action, in May 2007, Mr. Taub commenced the Second Divorce Action in the Supreme Court, New York County, and that action was subsequently transferred to the Supreme Court, Kings County. *In re Taub*, 413 B.R. at 59.

On several occasions, Ms. Taub sought the recusal of Justice Carolyn E. Demarest, the

---

[1] Ms. Taub is represented by counsel, David Bellon, Esq., in this action and in her Chapter 11 bankruptcy case. Ms. Taub advised the Court that her counsel was not available to attend the October 7 hearing due to a conflicting "appointment." Notably, Mr. Bellon was present in court on October 6, 2010, when the hearing was scheduled, and did not note the existence of any conflict. Mr. Bellon also did not attend the continued hearing on October 8, 2010.

fourth judge to whom the Second Divorce Action was assigned.  *In re Taub*, 413 B.R. at 59.  She also sued Justice Demarest in the United States District Court for the Eastern District of New York.  *Taub v. Demarest*, 2010 WL 680979, *1 (E.D.N.Y. Feb. 23, 2010).  Justice Demarest recused herself from the Second Divorce Action and the matter was assigned to Justice Matthew J. D'Emic.  *In re Simon Taub*, Case No. 10-48155, slip op. at 3 (Bankr. E.D.N.Y. Sept. 7, 2010).

The record reflects that Ms. Taub requested and obtained adjournments of trial dates scheduled in the Second Divorce Action for July 16, 2010, July 19, 2010 and August 2, 2010.  That case was again set to proceed to trial before Justice D'Emic on August 30, 2010, when, on August 30, 2010, Ms. Taub, her sister Esther Newhouse, and Ms. Pota as petitioning creditors commenced an involuntary bankruptcy case against Mr. Taub (the "First Petition").  *See In re Simon Taub*, Case No. 10-48155, Petition (Docket No. 1).  Mr. Taub moved to dismiss that case on August 31, 2010.  *In re Simon Taub*, Case No. 10-48155, Motion to Dismiss Case (Docket No. 4).  Following an evidentiary hearing on September 2, 2010, before Chief Judge Carla E. Craig of this Court, the First Petition was dismissed by Decision and Order entered on September 7, 2010.  *In re Simon Taub*, Case No. 10-48155, Order Dismissing Case (Docket No. 13).

The Second Divorce Action was again scheduled to proceed to trial before Justice D'Emic on October 4, 2010.  Lift Stay Motion ¶ 6.  As noted above, on September 29, 2010, Ms. Pota, as the sole petitioning creditor, commenced this involuntary bankruptcy case against the Debtor, which triggered the protections of the automatic stay.  Based on the entire record and a review of the exigencies presented by the trial schedule in the Second Divorce Action, the Court scheduled a hearing on the Lift Stay Motion by Order to Show Cause for October 7, 2010.

3

As also noted above, on October 7, 2010, and October 8, 2010, the Court held a hearing on the Lift Stay Motion, at which counsel for Mr. Taub, Katalin Pota, the petitioning creditor, *pro se,* Chana Taub, the debtor in *In re Chana Taub*, Case No. 08-44210, *pro se*, and counsel for Lori Lapin Jones, Chapter 11 Trustee, appeared and were heard, evidence was received, and the Court reserved decision.

<u>**Discussion**</u>

Mr. Taub seeks relief from the automatic stay in order to permit the pending Second Divorce Action in the Supreme Court, Kings County to proceed as scheduled.  *See* Lift Stay Motion ¶ 11.  As a result, the Court must determine whether he is entitled to relief from the automatic stay under the factors set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).

As noted above, no written opposition was filed in response to the Lift Stay Motion.  Ms. Pota, the petitioning creditor, states in substance that she opposes the Lift Stay Motion, and that she commenced this involuntary bankruptcy case on the advice of her disability advocates in order to protect her rights against Mr. Taub, including her rights to assert claims against Mr. Taub and to collect a judgment from him.  She also states that a judgment in the Second Divorce Action would prejudice her interests.

The Court also heard a statement in opposition to the Lift Stay Motion from Ms. Taub. In substance, Ms. Taub argues that all of the properties in which she claims an interest should be administered in the same court.  She also argues that unless it is stayed, the Second Divorce Action will interfere with the orderly administration of Mr. Taub's bankruptcy case.

*<u>The Automatic Stay</u>*

4

The filing of a bankruptcy petition under the Bankruptcy Code triggers a stay of any act to commence or continue "a judicial, administrative, or other action" to recover a prepetition claim against the debtor, and stays any act to "exercise control over property of the estate." 11 U.S.C. §§ 362(a)(1), (a)(3). The automatic stay is "effective immediately upon the filing" of a bankruptcy petition without further action. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994).

The automatic stay is a fundamental debtor protection designed to promote equal treatment among creditors and to provide the debtor with a "breathing spell" from the "financial pressures that drove [the debtor] into bankruptcy." *Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (internal quotations omitted). Notwithstanding this statutory protection, the court may modify the automatic stay for cause, including lack of adequate protection. 11 U.S.C. § 362(d)(1).

The automatic stay does not prevent the Debtor and Ms. Taub from seeking a dissolution of their marriage. 11 U.S.C. § 362(b)(2)(A)(iv). And the Stay Relief Motion does not call for this Court to express a view on the issues that the Debtor and Ms. Taub are litigating in state court. Rather, the sole issue presented here is whether Mr. Taub has established cause for relief from the automatic stay.

*Equitable Distribution*

As this Court has previously stated, New York's Domestic Relations Law sets forth the framework for determining interests in property in a divorce action. Section 236 of the Domestic Relations Law provides:

> Except where the parties have provided in an agreement for the disposition of their property . . . the court, in an action wherein all or part of the relief granted is

5

divorce, or the dissolution, annulment or declaration of the nullity of a marriage . . . shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment.

N.Y. Dom. Rel. Law § 236(B)(5)(a).

As one bankruptcy court explained:

[I]n July 1980, New York enacted an equitable distribution law, DRL § 236. Equitable distribution creates a classification of property known as "marital property." Marital property refers to "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, *regardless of the form in which title is held*." DRL § 236, Part B, subd. 1(c) (emphasis added).

Under equitable distribution, the matrimonial court can direct the distribution of marital property between the spouses in the final divorce judgment. DRL § 236, Part B, subd. 5(a).

*In re Cole*, 202 B.R. 356, 359-60 (Bankr. S.D.N.Y. 1996).

*Relief from the Automatic Stay*

Bankruptcy Code Section 362(d)(1) permits relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "The burden is on the moving party . . . to make an initial showing of cause [for relief from the stay]. Absent such showing, relief from the effect of a stay will be denied." *Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999)).

The Second Circuit has observed that "[n]either the statute nor the legislative history defines the term 'for cause.'" *Sonnax*, 907 F.2d at 1285. The court identified several factors to be considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed in another forum, as follows:

(1) whether relief would result in a partial or complete resolution of the issues; (2)

6

lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. "Not all of these factors will be relevant in every case." *Mazzeo,* 167 F.3d at 143.[2] And the court need not give equal weight to each factor. *Lamarche v. Miles*, 416 B.R. 53, 58 (E.D.N.Y. 2009) (citing *Burger Boys, Inc. v. South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 688 (S.D.N.Y. 1994)). Rather, as several courts have noted, "in deciding whether to lift a stay to allow a creditor to continue litigation in another forum, a bankruptcy court should consider the particular circumstances of the case and 'ascertain what is just to the claimants, the debtor and the estate.'" *In re Watkins*, 2005 U.S. Dist. LEXIS 44754 (E.D.N.Y. Aug. 23, 2005) (quoting *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994)); *In re Keene Corp*., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). *See In re Cole*, 202 B.R. at 361.

The Court will consider several relevant factors in turn.

*Sonnax* Factor 1:  Whether Relief Would Result in a Partial or Complete Resolution of the Issues

The first *Sonnax* factor is whether stay relief would result in a partial or complete resolution of the issues.

At this stage in the proceedings, despite years of litigation, the Debtor's and Ms. Taub's

---

[2]  *Sonnax* factors 3, 5, and 9 are not relevant to this matter as the Second Divorce Action does not involve the Debtor as a fiduciary, does not involve insurance, and will not result in a judicial lien avoidable by the Debtor.

respective equitable distribution interests in their marital property have not been determined. The Debtor argues that it will be of assistance to all of the proceedings before this Court for those interests to be determined in the Second Divorce Action as promptly as possible. *See* Lift Stay Motion ¶ 15. Ms. Taub asserts that this bankruptcy case will proceed more efficiently if the Second Divorce Action is stayed.

This Court has previously declined to exercise jurisdiction over an adversary proceeding addressing the ownership of certain properties in which Ms. Taub claims an equitable interest, where the same question is also pending before the state court. *See Taub v. Taub (In re Taub)*, 413 B.R. 81, 96 (Bankr. E.D.N.Y. 2009).

This Court has also previously determined, in the context of Ms. Taub's Chapter 11 bankruptcy case, that relief from the automatic stay would allow the Supreme Court, Kings County to determine issues including "the respective rights of the parties in their separate or marital property. . . ." N.Y. DOM. REL. LAW § 236(B)(5)(a). *See In re Taub*, 413 B.R. at 62. The same is true in this Debtor's bankruptcy case – that is, resolution of those issues will resolve significant open issues in the Debtor's bankruptcy case.[3]

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

*Sonnax* Factor 2:  Lack of Any Connection or Interference with the Bankruptcy Case

The second *Sonnax* factor is whether there is the lack of any connection with the bankruptcy case, and whether stay relief would interfere with this bankruptcy case. The Debtor

---

[3]  The Debtor has also moved to dismiss this bankruptcy case.  The issues raised by that motion, which was heard by the Court on October 7 and 8, 2010, and submitted for decision, will be considered and determined independently.

argues that stay relief will not interfere with this bankruptcy case or any of the proceedings pending before this Court. Lift Stay Motion ¶ 15. Ms. Taub asserts that this bankruptcy case will proceed more efficiently if the Second Divorce Action is stayed.

As noted during the hearing on this matter, it is plain that the Debtor is a central participant in both this bankruptcy case and the Second Divorce Action. And the resolution of the equitable distribution issues between the Debtor and Ms. Taub are similarly central to both actions. As the Court concluded in the context of Ms. Taub's Chapter 11 case, to this extent, the bankruptcy case and the Second Divorce Action are "connected." *See In re Taub*, 413 B.R. at 63.

But there as here, that does not mean that stay relief will "interfere" with this bankruptcy case. Relief from the automatic stay may be tailored to the particular circumstances, and here, such relief may be limited to allowing the Second Divorce Action to proceed to conclusion and the entry of judgment, with enforcement to take place in this Court. Thus restricted, stay relief will not "interfere" with this bankruptcy case. Indeed, the opposite appears more likely. The progress of any bankruptcy case requires the determination of the metes and bounds of property of the estate. Here, that requires the determination of what constitutes the marital property of the Debtor and Ms. Taub, and the equitable distribution of that property between them.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

*Sonnax* Factor 4:  Whether a Specialized Tribunal with the Necessary Expertise Has Been Established To Hear the Cause of Action

Another relevant *Sonnax* factor is whether a specialized tribunal with the necessary expertise has been established to hear the cause of action. Mr. Taub argues that the state court is

the appropriate and specialized forum to hear and determine the equitable distribution issues that are presently pending before Justice D'Emic in the Second Divorce Action. Ms. Taub again argues that this bankruptcy case will proceed more efficiently if the Second Divorce Action is stayed.

As this Court has previously found, the Supreme Court, Kings County has significant expertise in domestic relations matters, and is well qualified to determine the respective property entitlements and obligations of the parties to a divorce action. *See In re Chana Taub*, 413 B.R. at 64. As noted by one bankruptcy court:

> In New York, matrimonial courts have long been empowered, in connection with divorce actions, to determine the issues of title to property and to make directions pertaining to the possession of property.
>
> . . .
>
> Federal courts, including bankruptcy courts, ordinarily defer to the state courts in matrimonial matters to promote judicial economy and out of respect for the state courts' expertise in domestic relations issues. . . . New York's state courts are more familiar with the concepts of marital property and how to apply the statutory and discretionary factors that govern equitable distribution. Bankruptcy courts, on the other hand, rarely interpret or apply the equitable distribution statute.

*In re Cole*, 202 B.R. at 359-61 (citations omitted).

As this Court has also previously observed, the state court's expertise in dealing with matrimonial actions has been recognized by other courts. *See In re Chana Taub*, 413 B.R. at 64. As another bankruptcy court observed, "bankruptcy courts will generally defer to state courts in the interest of judicial economy and restraint and out of respect for the state courts' expertise in domestic relations issues." *In re Newman*, 196 B.R. 700, 703 (Bankr. S.D.N.Y. 1996). *See In re Owen*, 1996 U.S. Dist. LEXIS 18042 (N.D.N.Y Nov. 26, 1996) ("The state matrimonial court is the competent forum to adjudicate the respective responsibilities, obligations and property

10

entitlement of the parties before it, and the Bankruptcy Court should not interfere with that court's customary processes."); *Matter of Levine*, 84 B.R. 22, 24 (Bankr. S.D.N.Y. 1988) ("this court should not interfere with the state court's determination as to the New York law of equitable distribution as applied to the claims of the debtor and his wife."). *Accord Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992) ("the bankruptcy court correctly placed equitable distribution disputes in the category of cases in which state courts have a special expertise and for which federal courts owe significant deference."); *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985) ("It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'") (quoting *In re Graham*, 14 B.R. 246, 248 (Bankr. W.D. Ky. 1981)).

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

### *Sonnax* Factor 6:  Whether the Action Primarily Involves Third Parties

The sixth *Sonnax* factor is whether the action primarily involves third parties.  Relief from the automatic stay is sought to address the issues of marital property and equitable distribution.  These issues primarily involve the Debtor and Ms. Taub.

As noted above, the Debtor is a central participant in both this bankruptcy case and the Second Divorce Action.  Ms. Pota, the petitioning creditor, has no role in the Second Divorce Action.  And Ms. Taub, the other party to the Second Divorce Action, has taken an active role in the early stages of this bankruptcy case and is a debtor in her own related Chapter 11 proceeding.

Accordingly, the Court finds that this factor does not weigh in favor of or against relief

from the automatic stay.

*Sonnax* Factor 7:  Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors

The seventh *Sonnax* factor is whether litigation in another forum – here, the Supreme Court, Kings County – would prejudice the interests of other creditors.  The Debtor argues that the interests of creditors will not be injured because all parties in interest will benefit from a determination of the equitable distribution issues in the Second Divorce Action.  Here too, Ms. Taub argues that this bankruptcy case and the proceedings before this Court will benefit if the Second Divorce Action is stayed.

This Court has previously recognized the possibility that a state court equitable distribution action may interfere with the orderly progress of a bankruptcy case of a party to that action.  *See In re Chana Taub*, 413 B.R. at 65.  As another bankruptcy court observed, "[s]ending parties back to state court to litigate the issue of equitable distribution may interfere with the administration of the case, and prejudice creditors of the estate."  *In re Cole*, 202 B.R. at 361.  This is because:

> Granting stay relief creates the possibility that the matrimonial court will distribute property of the estate to the non-debtor spouse, in satisfaction of her prepetition claim, without regard to the bankruptcy priority system or the rights of the other creditors.  In addition, unlike bankruptcy, the debtor's creditors will probably not be able to participate in, or at least monitor the claim liquidation process.

*In re Cole*, 202 B.R. at 362.

But that is not the end of the analysis.  As the *Palmer* court observed, "[w]hile the matrimonial court is uniquely qualified to determine the nature and the extent of that [equitable distribution] entitlement, this court is exclusively authorized to adjudicate the impact of that

12

entitlement upon any property subject to the claims of other creditors of the estate." *In re Palmer*, 78 B.R. 402, 406 (Bankr. E.D.N.Y. 1987). *See In re Cole*, 202 B.R. at 362.

That is, the risk of prejudice to creditors can be addressed by limiting the scope of stay relief. As the *Cole* court found, "[t]he bankruptcy court can limit stay relief to the liquidation of the amount of the Movant's unsecured claim, and require her to return to the bankruptcy court to enforce her judgment through the claims allowance process." *In re Cole*, 202 B.R. at 362 (citing cases).

Here, stay relief may be granted to permit the matrimonial court to decide the issues before it, including the issue of equitable distribution, but only up to the entry of judgment. In that way, this Court may retain jurisdiction to enforce a judgment, and the priorities established by the Bankruptcy Code and the rights of other creditors may be protected.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

### *Sonnax* Factor 8:  Whether the Judgment Claim Arising from the Action Is Subject to Equitable Subordination

The eighth *Sonnax* factor is whether the judgment claim arising from the other proceeding is subject to equitable subordination. As the parties acknowledged at the October 7 hearing, if equitable subordination proves to be an issue in the Debtor's bankruptcy case, it will be decided by this Court. And to the extent that stay relief is granted to permit the court in the Second Divorce Action to decide the issues before it and to enter  judgment, with enforcement to take place in the bankruptcy court, this Court will retain the ability to decide the issue of equitable subordination.

Accordingly, the Court finds that this factor does not weigh in favor of or against relief

13

from the automatic stay.

*Sonnax* Factor 10:  The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation

The tenth *Sonnax* factor is the interests of judicial economy and the expeditious and economical resolution of litigation.  Mr. Taub observes that trial in the Second Divorce Action is under way, so that it is in the interests of both judicial economy and expeditious and economical resolution of litigation to allow the Second Divorce Action to proceed.  Lift Stay Motion ¶ 10. Ms. Taub states that the proceedings before this Court, and all of the issues relating to equitable distribution and the Second Divorce Action, may be addressed more effectively if the Second Divorce Action is stayed.

It has been more than one year since this Court noted that "the long history of the contentious and acrimonious litigation between the Debtor, Mr. Taub, and others confirms that the interests of judicial economy and the expeditious and economical resolution of litigation merit careful attention here." *In re Chana Taub*, 413 B.R. at 66-67.

And it has been some five years since the Second Divorce Action between the Debtor and Mr. Taub was commenced.  The Supreme Court, Kings County is familiar with the history of the proceedings, and when this bankruptcy case was commenced, trial in the Second Divorce Action was on the threshold of commencing.  But for the commencement of this bankruptcy case, it would be moving forward presently.  *See* Lift Stay Motion ¶¶ 6-7.

Equitable distribution is governed by New York law, and is an area of law where the state courts have special expertise.  It is also an area where bankruptcy courts routinely, and appropriately, defer to state court for decision, with enforcement left to the bankruptcy process. *See, e.g., In re Newman*, 196 B.R. at 703; *Matter of Levine*, 84 B.R. at 24; *In re Robbins*, 964

14

F.2d at 345; *In re MacDonald*, 755 F.2d at 717.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

<u>*Sonnax* Factor 11:  Whether the Parties Are Ready for Trial in the Other Proceeding</u>

The eleventh *Sonnax* factor is whether the parties are ready to proceed to trial in the other proceeding.  As noted above, and as the Debtor and Ms. Taub acknowledge, trial has begun in the Second Divorce Action, and the court is prepared to continue that trial in the coming days. Neither the Debtor nor Ms. Taub has suggested that they are not ready to proceed.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

<u>*Sonnax* Factor 12:  Impact of the Stay on the Parties and the Balance of Harms</u>

The final *Sonnax* factor is the impact of the automatic stay on the parties and the balance of the harms.  Mr. Taub argues that any further delay in the trial of the Second Divorce Action that is occasioned by the automatic stay is damaging to all of the parties.  Ms. Taub argues that she will be harmed if the Second Divorce Action is allowed to proceed.

Now as before, this Court views the Supreme Court, Kings County as an appropriate forum to determine the issues present in the Second Divorce Action, including the question of equitable distribution of the marital property between the Debtor and Ms. Taub, for several reasons.  *See In re Chana Taub*, 413 B.R. at 68.  The Second Divorce Action has been pending there since 2005, and that court has experience with both the area of law and these proceedings. The resolution of the equitable distribution issues will assist in the administration of this bankruptcy case as well as Ms. Taub's bankruptcy case.  And stay relief may be limited to

allowing the Supreme Court, Kings County to determine the issues, up to the entry of judgment, but not enforcement, so that the administration of this bankruptcy case and the interests of the parties present here are not harmed.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

*        *        *

For these reasons, and based on the entire record, the Court finds that Mr. Taub has shown that there is cause for relief from the automatic stay, to permit the parties to proceed in the Second Divorce Action to conclusion and the entry of judgment, with enforcement to take place in this Court.

### _Annulment of the Automatic Stay_

The Debtor asks this Court to annul the automatic stay, in order to give effect to proceedings that took place in the Second Divorce Action on October 4, 2010. *See* Lift Stay Motion ¶¶ 9, 11.

Bankruptcy Code Section 362(d)(1) provides that a court "shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay," for cause or for other grounds. 11 U.S.C. § 362(d). As one respected treatise states, "[t]he flexibility of section 362 is underscored by the language of subsection (d), which provides that relief may be granted by 'terminating, annulling, modifying, or conditioning' the stay. The effect is to permit the court to fashion the relief to the particular circumstances of the case." 3 COLLIER ON BANKR. ¶ 362.07[1] at 362-104 (16th ed. 2010). And "[t]he use of the word 'annulling' means that relief from the stay may operate retroactively." *Id.*

16

Significantly, when a court annuls the stay, it validates actions taken in violation of the stay. *Id*. Annulment of the automatic stay "operate[s] retroactively to the date of the filing of the petition . . . and thus validate[s] actions taken by the party at a time when he may have been unaware of the existence of the stay." *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984). *See In re Best Payphones,* 279 B.R. 92, 98 (Bankr. S.D.N.Y. 2002).

Courts determine whether annulment of the automatic stay is appropriate on a case-by-case basis, and the party seeking the retroactive relief "has the burden to make a prima facie showing of cause" for such relief. *In re WorldCom, Inc.*, 325 B.R. 511, 521 (Bankr. S.D.N.Y. 2005). Annulment is the exception, not the rule. *See In re MarketXT Holdings Corp.*, 2009 Bankr. LEXIS 1897 at *11 (Bankr. S.D.N.Y. July 20, 2009), *aff'd, Chimera Capital, L.P. v. Nisselson (In re MarketXT Holdings Corp.),* 428 B.R. 579 (S.D.N.Y. 2010). The policy objectives advanced by the automatic stay require that courts exercise discretion to annul the stay sparingly, and only when the moving party has met its burden of showing cause. *In re Soares*, 107 F.3d 969, 976-77 (1st Cir. 1997).

Courts may consider several factors in determining whether to grant retroactive stay relief to give effect to actions that may violate the stay. These include whether the debtor has not acted in good faith, whether the property at issue is necessary for an effective reorganization, whether grounds for stay relief existed at the relevant time and a motion for relief, if filed, would have been granted; and whether the failure to grant retroactive relief would cause unnecessary expense to the creditor. *See MarketXT*, 2009 Bankr. LEXIS 1897, at *10. And these considerations are the same whether the request comes from a creditor or the debtor. *Id.*

Here, several relevant factors weigh in favor of annulment of the automatic stay. For all

17

of the reasons set forth herein, it is apparent if a motion for relief from the automatic stay had

been made in advance of the October 4, 2010, proceedings in the Second Divorce Action, this

Court's analysis under the *Sonnax* factors would have been the same, and stay relief would have

been granted.  In addition, if retroactive relief from the automatic stay is not granted, then the

parties to the Second Divorce Action might be required to repeat a day of proceedings, causing

the parties and the court before whom that matter is pending to incur unnecessary and

unproductive – indeed, avoidable and pointless – delay and expense.  It is not necessary to reach

the question of whether the petitioning creditor is proceeding in good faith, but the record

suggests that the question is not free from doubt.

 For these reasons, and based on the entire record, the Court finds that it is appropriate to

annul the automatic stay.

## *Waiver of Bankruptcy Rule 4001(a)(3)*

 Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an

automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, unless the

court orders otherwise."  FED. R. BANKR. P. 4001(a)(3).  Rule 4001(a)(3) serves at least two

purposes.  First, the Rule provides a window of time for a party affected by an order granting stay

relief to take steps in response to the order, including to request a stay pending appeal before the

order is enforced or implemented.  *See* FED. R. BANKR. P. 4001 Advisory Committee's Note

(1999 Amendment).  And second, the Rule permits a court, in its discretion, to order that it is not

applicable, so that the prevailing party may proceed immediately.  *Id.*

 As the *Collier's* treatise explains:

> The rule does not provide the grounds on which a court would do so, but
> indirectly suggests that a risk of irreparable damage to the creditor would provide

such grounds. . . . [T]he rule implies that the 14-day stay should not apply in circumstances where a delay after the entry of the order could create the same risk of irreparable damage that delay before the entry of the order might create.

3 COLLIER ON BANKR. ¶ 362.08[9] at 362-133 (16th ed. 2010).  *See In re Eclair Bakery, Ltd.,* 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000).

Here, the record does not support the conclusion that the delay afforded by Bankruptcy Rule 4001(a)(3) would cause irreparable damage to the petitioning creditor Katalin Pota, or any other creditor.  With trial in the Second Divorce Action ready to resume, the objectives of Bankruptcy Rule 4001 can be better achieved by tailoring relief from the automatic stay so that the Second Divorce Action may proceed to the entry of judgment, with enforcement to occur in this Court.  As described above, the parties to that action are ready to proceed.  Delay and expense, and the prospect of irreparable damage, are far more likely to result if the effective date of this Court's Order is stayed than if it is immediately effective.

For these reasons, and based on the entire record, the Court finds that it is appropriate to waive the provisions of Bankruptcy Rule 4001(a)(3), so that this Court's Order granting relief from the automatic stay is immediately effective.

## Conclusion

For the reasons stated herein, and based on the entire record, the Lift Stay Motion is granted to the extent that Mr. Taub may proceed in the Second Divorce Action to conclusion and the entry of judgment, with enforcement to take place in this Court.  The Lift Stay Motion is further granted to the extent that the automatic stay is annulled.  And the provisions of Bankruptcy Rule 4001(a)(3) are waived, so that this Court's Order granting this relief shall not be stayed and shall be effective when it is entered.  This Court shall retain jurisdiction to enforce any

19

judgments within the context of this bankruptcy case.

An order in conformity with this Memorandum Decision shall be entered simultaneously

herewith.

Dated: Brooklyn, New York
       October **_8_**, 2010


                                    **_s/ Elizabeth S. Stong_**
                                    ELIZABETH S. STONG
                                    UNITED STATES BANKRUPTCY JUDGE