UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

SIMON TAUB,                                              Chapter 7
                                                        Case No. 10-49215

                        Debtor.
----------------------------------------------------------------x


MEMORANDUM DECISION ON MOTION TO DISMISS
INVOLUNTARY BANKRUPTCY PETITION



Appearances:

Katalin Pota
  *Petitioning Creditor, pro se*

Leo Fox, Esq.                                   Alicia Leonhard, Esq.
Law Office of Leo Fox                           Office of the United States Trustee
630 Third Avenue                                271 Cadman Plaza East, Suite 4529
New York, NY 10017                              Brooklyn, NY 11201
  *Attorney for Simon Taub*                         *Office of the United States Trustee*

Chana Taub
  *Chapter 11 Debtor in*
  *In re Chana Taub, Case No. 08-44210*

Christine Quigley, Esq.
SilvermanAcampora LLP
100 Jericho Quadrangle (Suite 300)
Jericho, NY 11753
  *Attorney for Chapter 11 Trustee Lori Lapin Jones*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of the alleged Debtor, Simon Taub, brought on by order to show cause, to dismiss this involuntary Chapter 7 case pursuant to Bankruptcy Code Section 303(b) (the "Motion to Dismiss"). Docket No. 10. Mr. Taub also seeks attorney's fees and sanctions under Bankruptcy Code Section 303(i).

## Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

## Background

This is not the first involuntary petition to which the petitioning creditor Katalin Pota has subscribed, and this Court does not write on a blank slate.

On August 30, 2010, Chana Taub, her sister Esther Newhouse, and Ms. Pota, a former tenant at 10 Grand Avenue, Brooklyn, New York, commenced an involuntary Chapter 7 bankruptcy case against Mr. Taub. According to that petition, Ms. Taub, Ms. Newhouse, and Ms. Pota held claims against Mr. Taub in the amounts of $700,000, $500,000, and $200,000, respectively. *See In re Simon Taub*, Case No. 10-48155 (*"Simon Taub I"*), Docket No. 1 (Petition) (the "First Petition"), at 2. That petition characterizes Mr. Taub's debts as "primarily business debts." First Petition at 1. Ms. Pota and the other petitioners did not complete the sections of the First Petition that call for each petitioner to identify the nature of her claim.

At the same time, Ms. Pota and the other petitioners filed a statement pursuant to Local Bankruptcy Rule 1073-2(b) stating that "no related case is pending or has been pending at any time." First Petition, E.D.N.Y. LBR 1073-2(b) Statement, at 3-4. The petitioning creditors did not disclose that Ms. Taub's Chapter 11 bankruptcy case, which she commenced on July 1, 2008,

is pending before this Court.

On August 31, 2010, Mr. Taub moved to dismiss the First Petition. Following an evidentiary hearing on September 2, 2010, before Chief Judge Carla E. Craig, the First Petition was dismissed by Decision and Order entered on September 7, 2010. *Simon Taub I*, 2010 WL 3504097 (Bankr. E.D.N.Y. Sept. 7, 2010).

As noted by Chief Judge Craig in her decision, these matters have a long history before this Court. As one illustration of this, the docket of Ms. Taub's Chapter 11 bankruptcy case shows almost 800 entries. As also noted by Chief Judge Craig, Mr. Taub and Ms. Newhouse are creditors of Ms. Taub's estate and have appeared before this Court on many occasions. And Ms. Pota, one of the petitioning creditors in the First Petition, is the sole petitioning creditor here.

Accordingly, the circumstances of these other bankruptcy cases have some bearing on the matters to be determined on Mr. Taub's Motion to Dismiss. Familiarity with these proceedings is assumed, and some background is set forth below.

*Ms. Taub's Chapter 11 Bankruptcy and the Pending State Court Actions*

Mr. Taub and Ms. Taub have been parties to two divorce actions in New York Supreme Court. One of these actions (the "Second Divorce Action"), is presently pending in New York State Supreme Court, Kings County (the "Supreme Court, Kings County"). That action was stayed by the July 1, 2008 filing of Ms. Taub's Chapter 11 petition. On August 14, 2009, this Court entered an order granting relief from the automatic stay pursuant to Bankruptcy Code Section 362(d)(1), to allow the Second Divorce Action to proceed to conclusion and entry of judgment, with enforcement to take place in this Court.

Ms. Taub filed a Notice of Appeal from that order on December 18, 2009, and later withdrew her appeal.  By order entered on July 1, 2010, U.S. District Judge Carol B. Amon dismissed the appeal.

*The Appointment of a Chapter 11 Trustee and the District Court Appeal*

On April 9, 2010, this Court entered a memorandum decision and order (the "Trustee Order") directing the appointment of a Chapter 11 trustee to operate Ms. Taub's estate.  *In re Chana Taub*, 427 B.R. 208 (Bankr. E.D.N.Y. 2010).  The Court found by clear and convincing evidence that there was cause to appoint a trustee under Bankruptcy Code Sections 1104(a)(2) and (3), and noted, among other matters, that Ms. Taub's estate was not current on administrative expenses, that Ms. Taub had negative relationships with certain estate professionals, which had impeded progress towards reorganization, that substantial acrimony existed between Ms. Taub and her creditors, and that conflicts of interest impaired Ms. Taub's ability to fulfill her fiduciary duties to creditors.  *In re Chana Taub*, 427 B.R. at 227-32.

On April 13, 2010, the Court entered an order appointing Lori Lapin Jones as Chapter 11 Trustee.  On April 28, 2010, after a contested hearing, the Court entered an order appointing SilvermanAcampora LLP as attorneys for the Chapter 11 Trustee.

By Notices of Appeal dated April 16, 2010, and April 23, 2010, Ms. Taub and Ms. Newhouse appealed the Trustee Order to the District Court.  On May 13, 2010, this Court denied Ms. Taub's motion to stay the Trustee Order pending those appeals.  And on August 30, 2010, Judge Amon issued a Memorandum Decision and Order affirming both orders.  *Taub v. Adams*, 2010 U.S. Dist. LEXIS 104805 (E.D.N.Y. Aug. 30, 2010).  As a result, the Trustee Order continues in effect, and vests the Chapter 11 Trustee with all of the rights, duties, and powers of

a trustee under the Bankruptcy Code, including the authority to take possession of Ms. Taub's

property, to operate and manage Ms. Taub's business, and to perform all of the duties of a trustee

set forth in Bankruptcy Code Section 1106(a).

*The First Involuntary Petition and Related Proceedings*

      As noted above, on August 30, 2010, the same day that trial was set to commence in the

Second Divorce Action in Supreme Court, Kings County, petitioning creditors Ms. Taub, Ms.

Newhouse and Ms. Pota filed the First Petition commencing an involuntary Chapter 7

bankruptcy case against Mr. Taub.  The next day, Mr. Taub moved by application for an order to

show cause to dismiss the First Petition.[1]  This Court, by Chief Judge Craig, scheduled the

motion to dismiss to be heard on September 2, 2010.  Ms. Taub filed opposition to the motion to

dismiss the First Petition on September 1, 2010, and Mr. Taub filed a reply on September 2,

2010.

      The Court held an evidentiary hearing on September 2, 2010, at which Mr. Taub, by

counsel, Ms. Taub, by counsel, Ms. Newhouse, *pro se*, the Chapter 11 Trustee, by counsel, and

the United States Trustee, by counsel, appeared and were heard.  Petitioning creditor Ms. Pota

did not appear at the hearing or present documentary evidence to support her claim.

      As the Court observed:

> During the course of the hearing, the Court heard the testimony of Ms. Taub, Mr.
> Taub, and Ms. Newhouse, and received multiple exhibits in evidence.  The Court
> heard the arguments of Mr. Taub and the Chapter 11 trustee in support of the
> Motion to Dismiss, and the arguments of Ms. Taub and Ms. Newhouse in
> opposition.

---

[1]  Mr. Taub also sought attorneys fees and sanctions under Bankruptcy Code Section
303(i).  The Court did not decide the issue, and retained jurisdiction under Bankruptcy Code
Section 349 to consider the request at a later time.  *Simon Taub I*, 2010 WL 3504097, at *12.

*Simon Taub I*, 2010 WL 3504097, at *4.

Ms. Pota did not appear at the hearing, but the other petitioning creditors and Mr. Taub addressed her claim.  Ms. Newhouse asserted that Mr. Taub had stolen valuable property from Ms. Pota, and that these thefts were documented by police reports.  *Simon Taub I*, 2010 WL 3504097, at *5.  Mr. Taub contended that he owed nothing to Ms. Pota, and disputed that he had stolen her property.  Mr. Taub asserted that Ms. Pota owed him rent arrears from the time she was a tenant in one of his properties, and offered evidence to show that he paid fees to a storage company to store her personal belongings.  Ms. Newhouse disputed the authenticity of the evidence and the assertions.  *Id.*

The Court found that the claims asserted by Ms. Taub and Ms. Newhouse were subject to bona fide disputes, and contingent as to amount.  *Simon Taub I*, 2010 WL 3504097, at *10, *11, *12.  As a consequence, the Court also found that Ms. Taub and Ms. Newhouse were not eligible to be petitioning creditors under Bankruptcy Code Section 303(b).  *Simon Taub I*, 2010 WL 3504097, at *11, *12.  As to Ms. Pota's claim, the Court found that the petitioning creditors did not meet their burden to come forward with persuasive evidence that Ms. Pota's claim was not subject to a bona fide dispute as to liability, or was not contingent as to amount.  *Id.*  As a result, the Court concluded that Ms. Pota was ineligible to be a petitioning creditor for purposes of Bankruptcy Code Section 303(b).  *Id.*  Based on the entire record, the Court concluded that none of the Petitioning Creditors was eligible to file the first involuntary petition, and entered a memorandum decision and order dismissing the First Petition on September 7, 2010.  *Id.*

<u>The Second Involuntary Petition</u>

On September 29, 2010, Ms. Pota commenced this bankruptcy case by filing an

involuntary petition (the "Second Petition") against Mr. Taub.  According to the petition, Ms.

Pota holds a claim against Mr. Taub in the amount of $200,000.  The Second Petition describes

the debts owed by Mr. Taub as "primarily consumer debts," and describes his assets as "multi-

asset real estate."  Second Petition at 1.  Ms. Pota did not complete the section of the Petition

that calls for a description of the nature of her claim.  And she did not provide any

documentation in support of her claim.

     Ms. Pota does not identify any "pending bankruptcy case filed by or against any partner

or affiliate of this debtor" in the Second Petition.  Nor did she file the required statement

pursuant to Local Bankruptcy Rule 1073-2(b) with respect to the pendency of related cases.

*The Stay Relief Motion*

     Trial in the Second Divorce Action was scheduled to commence on October 4, 2010,

before Justice Matthew D'Emic in Supreme Court, Kings County.  Letter notice of this new date

was provided to the parties by Justice D'Emic, and he stated:

> This letter will serve as notice that the case of Taub v. Taub will be tried on
> October 4, 2010.  You are to consider yourself actually engaged.  The trial will
> commence on that date, and you are directed not to become engaged in any matter
> that will interfere with this case.  No adjournments will be granted.

Docket No. 10 (Affidavit of Simon Taub in Support of Motion to Dismiss Involuntary Petition)

("Simon Taub Aff.") Exh. B.

     As noted above, the Second Petition was filed on September 29, 2010, less than a week

before the October 4, 2010, trial date and on the eve of a religious holiday.  On that same date,

Mr. Taub and the Chapter 11 Trustee entered into a stipulation concerning the application of the

automatic stay to the Second Divorce Action.  The Court declined the parties' request to "so

order" the stipulation, stating:

> Relief from the automatic stay may be obtained pursuant to Bankruptcy Code Section 362(d) "[o]n request of a party in interest and after notice and a hearing . . . ." It may also be obtained in the appropriate circumstance on consent, including where consent has been obtained by the affected parties. And notice may be the notice that is required by the Bankruptcy Rules and Local Bankruptcy Rule 9006-1(a), or pursuant to Bankruptcy Code Section 102(1)(A), which provides for "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances . . . ."

Docket No. 7 (Order on Request for Order Granting Relief from the Automatic Stay) at 2.

The Court found that the Stipulation did not contain the consent of all affected parties, nor constitute a request for stay relief that provided the notice required by the Bankruptcy Code and Rules, and denied the relief requested without prejudice.

On October 5, 2010, Mr. Taub filed a motion to annul any automatic stay which may exist pursuant to Section 362(d) to permit the Second Divorce Action to proceed. Mr. Taub also sought retroactive relief, in order to give effect to proceedings that occurred in the Second Divorce Action on October 4, 2010, after this involuntary bankruptcy case was commenced. There was no written opposition filed in response to the Lift Stay Motion.

On October 7 and October 8, 2010, this Court held a hearing on the Lift Stay Motion and the Motion to Dismiss, at which counsel for Mr. Taub, Ms. Pota, the petitioning creditor, *pro se,* Ms. Taub, *pro se,*[2] and counsel for the Chapter 11 Trustee appeared and were heard, evidence was received, and the Court reserved decision.

On October 8, 2010, this Court issued a Memorandum Decision and Order annulling the automatic stay effective as of September 29, 2010, the date that this involuntary bankruptcy case

---

[2] Ms. Taub is represented by David Bellon, Esq., in this bankruptcy case and in her Chapter 11 bankruptcy case. Ms. Taub advised the Court that her counsel was unable to attend the October 7 hearing due to a conflicting "appointment." Notably, Mr. Bellon was present in court on October 6, 2010, when the hearing was scheduled, and did not note the existence of any conflict. Mr. Bellon did not attend the continued hearing on October 8, 2010.

was commenced.  The Court concluded:

> [T]he Lift Stay Motion is granted to the extent that Mr. Taub may proceed in the
> Second Divorce Action to conclusion and the entry of judgment, with
> enforcement to take place in this Court.  The Lift Stay Motion is further granted
> to the extent that the automatic stay is annulled.  And the provisions of
> Bankruptcy Rule 4001(a)(3) are waived, so that this Court's Order granting this
> relief shall not be stayed and shall be effective when it is entered.  This Court
> shall retain jurisdiction to enforce any judgments within the context of this
> bankruptcy case.

*In re Simon Taub,* 2010 WL 3946173, at *11 (Bankr. E.D.N.Y. Oct. 8, 2010).

<u>*The Motion to Dismiss the Second Involuntary Petition*</u>

On October 4, 2010, Mr. Taub moved by order to show cause to dismiss this case.  Mr.

Taub argues that the Petition must be dismissed because Ms. Pota, the sole petitioning creditor,

does not hold a claim that is not the subject of a bona fide dispute as to liability and amount.  Mr.

Taub denies that "[Ms.] Pota has any claim against [him], much less a claim not subject to a

bona fide dispute or a claim which is fixed as to liability and amount."  Simon Taub Aff. ¶ 11.

Mr. Taub also states:

> Ms. Pota resided in one of my buildings located at 10 Grand Avenue, starting in
> March of 2004.  Ms. Pota did not pay rent for a year and a half.  I commenced an
> eviction action against her.  Ms. Pota employed the services of Ms. Grief, an
> attorney used by Esther Newhouse, sister to Chana Taub and a petitioning
> creditor in the First Involuntary Petition, during the course of the Chana Taub
> Chapter 11 case. . . . Ms. Pota ultimately moved out, without paying her rent,
> which by that time had accrued to at least $36,000.00.  As part of her move, in or
> about the summer of 2009, Ms. Pota stored her belongings in a storage facility by
> the name of "Ryerson Street Mini Storage".  In order to facilitate her vacancy and
> regain possession of the apartment, I agreed to pay her storage for six (6) months.
> I paid the storage facility for six (6) months.

Simon Taub Aff. ¶ 12.  And Mr. Taub observes that in dismissing the first involuntary petition,

this Court, by Chief Judge Craig, stated that "there is no evidence of any obligation . . . to Ms.

Pota."  Simon Taub Aff. ¶ 13.

Finally, Mr. Taub seeks an award of costs, reasonable attorneys' fees, and punitive damages. He notes that "bad faith is a prerequisite for an award of damages, [but] it is not a prerequisite for an award of costs and attorneys' fees." Docket No. 10 (Memorandum of Law in Support of Dismissal of Involuntary Petition) at 4. He argues:

> Katalin Pota was a petitioning creditor in the exact same amount and likewise unsubstantiated by documentation in the First Involuntary petition. Now she files a Second Involuntary Petition for the same amount and days before the Equitable Distribution is to proceed. Here, only one conclusion can be drawn: the petitioner's exercise of bad faith efforts to block the [Second Divorce Action] from proceeding despite the New York State Supreme Court's scheduling of the trial and emphasis that the trial should not be further delayed.

*Id*.

Based on these circumstances and the entire record, this Court directed Ms. Pota, by Order to Show Cause entered on October 4, 2010 (the "OSC"), to appear at a hearing on October 6, 2010, to show cause why this Court should not dismiss the involuntary petition and assess sanctions against her under Bankruptcy Code Section 303(i). The OSC directed service by fax or e-mail of the Motion to Dismiss, required opposition to be served and filed by October 5, 2010, at 4:00 p.m., and set a hearing for October 6, 2010.

Ms. Pota opposes the Motion to Dismiss. She states in substance that she was harassed by Mr. Taub during her tenancy to the point that she was compelled to move out. She argues that Mr. Taub presented forged checks as evidence of payments for storing her belongings, and contends that he made certain payments by credit card instead. Ms. Pota also argues that she should be permitted to proceed as a petitioning creditor because of her *pro se* status, and because she "was completely traumatized from being constantly harassed, threatened and robbed [, and] agreed to move out on condition that Mr. Taub would pay for moving and six month's storage

and not sue me for back rent."  Docket No. 23 (Objection of Creditor to Debtor's Motion to Dismiss Involuntary Bankruptcy Petition) ("Pota Obj.") ¶ 13.

As to her claim, Ms. Pota states that Mr. Taub owes her "much more than the $200,000" that she identifies as her claim as the petitioning creditor.  Pota Obj. p. 9, ¶ d.  She attaches documents to her objection that reflect the contentious relationship between her and Mr. Taub. These include a complaint filed with the New York City Police Department reporting grand larceny, a complaint filed with the United States Postal Inspection Service reporting mail theft, a case summary relating to a closed criminal case against Mr. Taub, a rider to a lease naming Ms. Pota as tenant, a holdover petition commenced against her by Grand Avenue Realty LLC seeking possession of the premises on grounds that they are located in an illegal multiple dwelling, an e-mail to Ms. Pota from Mr. Taub's counsel reminding her of the hearing date on the Order to Show Cause and Mr. Taub's intention to seek $75,000 in sanctions against her, and flyers announcing a warehouse furniture sale at 10 Grand Avenue.

*The Evidentiary Hearing*

On October 7 and 8, 2010, the Court held an evidentiary hearing at which Mr. Taub, by counsel, Ms. Pota, *pro se* with the assistance of Jessica Coco, her disability advocate, Ms. Taub, *pro se*, Soya Radin, *pro se*, the Chapter 11 Trustee, by counsel, and the United States Trustee, by counsel, appeared and were heard.  The Court heard the testimony of Ms. Pota, Mr. Taub, and Ms. Coco, and heard a statement from Ms. Taub.

Ms. Pota testified in substance that her $200,000 claim against Mr. Taub is an estimated, composite amount comprised of her losses from several different incidents.  These include her costs to defend frivolous lawsuits commenced by Mr. Taub arising out of her tenancy at 10

Grand Avenue; the value of her lost or damaged belongings, including her art collection; the $600 that she was required to pay to the storage company to gain access to her belongings; and the rent payments that Mr. Taub "illegally collected from" her, including utility payments that were paid through a New York City subsidy program. 10/7 Tr. at 71, 94.[3] Ms. Pota testified that if she pursues a lawsuit against Mr. Taub, then she will claim at least $200,000 in damages, and may seek more. 10/7 Tr. at 82. Ms. Pota also testified that she did not discuss her claim with Mr. Taub, and that he "didn't offer to reimburse me" for the $200,000 that she claims he owes her. *Id.*

Ms. Pota also testified as to her reasons for filing the Second Involuntary Petition, stating that she was concerned that if she did not do so, her "rights may be violated that I cannot have a claim." 10/7 Tr. at 76. She stated that she wished to assure that she could collect a future judgment from Mr. Taub. *Id.* In addition, Ms. Pota testified that she believes that it is against her interest if Mr. Taub declares bankruptcy, "because then I cannot collect money from him." 10/7 Tr. at 76-77.

Mr. Taub testified that he was not aware that Ms. Pota had a claim against him, and that he learned of her claim when the first involuntary petition was filed. 10/8 Tr. at 30. He stated:

> The first time I find out that I owe her money was when my wife filed the petition for involuntary bankrupt [sic], and this happened she says in 2004, correct? It's – now it's almost 2011. It took her seven years to remember.

*Id.* He denied owing any amount to Ms. Pota, and asserts that she cannot be a petitioning creditor because her alleged claims against him arose in 2004 and are barred by the applicable statutes of limitation. He stated, "I don't owe her one dollar. It's 2004. Statute of limitations

---

[3] "Tr." refers to the transcript of the hearing held on October 7 and 8, 2010. Docket Nos. 31, 29.

-11-

expired already even." 10/8 Tr. at 66.

In addition, Mr. Taub testified that Ms. Pota owes him approximately $100,000, arising

out of her tenancy at 10 Grand Avenue. He stated:

> The landlord for the [Grand Avenue Realty] LLC she owes 40 about $40,000 plus
> she left the apartment in bad shape is another about 25. She owes me
> approximately all together about $80,000, with interest it will come out to
> $100,000.

10/8 Tr. at 36.

Ms. Taub, *pro se*, made a statement on the record opposing the dismissal of the Second

Involuntary Petition. She stated in substance that Mr. Taub's testimony was contradictory and

inconsistent, including with respect to his contacts with the New York City Department of

Health concerning the 10 Grand Avenue property and other matters. *See* 10/8 Tr. at 114-16. She

also disputed many of Mr. Taub's factual assertions, including that he did not steal mail from the

tenants and that he did not recognize Ms. Newhouse's handwriting. 10/8 Tr. at 115. Ms. Taub

denied that she told Ms. Pota not to pay the rent, and stated that contrary to Mr. Taub's

assertions, Ms. Pota "gets along with all the tenants, and she has a lot of friends." *Id*. As to Mr.

Taub's damages, Ms. Taub noted that "Mr. Taub claims that because of this petition he was

denied credit cards," but did not produce evidence that any applications for credit cards were

denied. 10/8 Tr. at 116.

### Discussion

Bankruptcy Code Section 303(b) provides that a single petitioning creditor may

commence an involuntary bankruptcy case if that creditor's claim is "not contingent as to

liability or the subject of a bona fide dispute as to liability or amount," and if there are fewer than

twelve such creditors, if that creditor holds "in the aggregate at least $14,425 of such claims[.]"

11 U.S.C. § 303(b)(1), (2).

Courts recognize that a petitioning creditor's claim must be certain as to both liability and amount.  As one court observed:

> [I]n order to qualify as a petitioning creditor, the creditor must hold a claim that is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount."  A creditor must satisfy both prongs of this test; the claim must not be subject to a bona fide dispute as to *either* liability or *a dispute* as to amount.

*In re Aminian*, 2008 WL 793574, at *2 (Bankr. S.D.N.Y. Mar. 25, 2008) (*quoting* 11 U.S.C. § 303).  *See* 2 COLLIER ON BANKRUPTCY ¶ 303.11 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

As the Second Circuit has found, a petitioning creditor bears the initial burden of coming forward with evidence to "establish a prima facie case that no bona fide dispute exists."  *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 118 (2d Cir. 2003) (abrogated on other grounds by *In re Zarnel,* 2010 WL 3341428 (2d Cir. Aug. 26, 2010)).  "Once a prima facie case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute."  *Id.*

The standard for making this assessment is an objective one.  That is, this Court must determine whether "'there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt.'"  *BDC 56*, 330 F.3d at 117 (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)).  This task is a limited one, as the court must "'ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute.'"  *BDC 56*, 330 F.3d at 118 (quoting *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365).  "Importantly, the court need not resolve any genuine issues of fact or law; it only must determine that such issues exist."  *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 945 (6th Cir.

2007). "Congress has made clear that it intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." *Id.*

Accordingly, this Court must determine whether, applying an objective test, Ms. Pota has met her initial burden to come forward with evidence sufficient to establish a prima facie case that no bona fide dispute exists as to the debt that she claims is owed to her by Mr. Taub.

There are two components to this inquiry – liability and amount – and a petitioning creditor must satisfy both in order for the bankruptcy case to proceed.  As Chief Judge Craig found in dismissing the first involuntary petition:

> The 2005 amendments enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act amended § 303 to require that a petitioning creditor's claim cannot be subject to a bona fide dispute as to liability *or amount*.  The result of this amendment is that "'disputes as to amount – not just liability – are sufficient to create a bona fide dispute.'"  *In re Mountain Dairies, Inc.*, 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007) (*quoting* 3 COLLIER ON BANKRUPTCY ¶ 303.30[2][b] (15 rev. ed. 2006)).

*Simon Taub I*, 2010 WL 3504097, at *11.

<u>*Whether there is a bona fide dispute as to liability*</u>

In the involuntary petition and in her testimony, Ms. Pota claims that Mr. Taub is liable to her for damages from alleged vandalism and theft that he committed or arranged.  *See* 10/7 Tr. at 63.  Ms. Pota did not attach any documentary evidence to the involuntary petition in support of her claim, and similarly did not offer documentary evidence at the hearing to support her allegations.

Ms. Pota's testimony shows that she and Mr. Taub have had a long and often difficult relationship in connection with her tenancy at 10 Grand Avenue.  10/7 Tr. at 31, 57.  Ms. Pota testified that she "was dragged to court several times fraudulently" by Mr. Taub in connection

with "frivolous lawsuits [that were] dismissed by the court." 10/7 Tr. at 31, 54, 67. She described Mr. Taub's refusal to give evidence in connection with her police report of "burglaries and all kind of criminal activities" in which she claims that he was involved. 10/7 Tr. at 40, 63.

In her objection, Ms. Pota states that she "agreed to move out on condition that Simon Taub would . . . not sue me for back rent. He had no right to collect rent, he defrauded the government." Pota Obj. ¶ 13. At the hearing, she testified that Mr. Taub stated that he would not sue her for back rent, and that "I don't owe anything." 10/7 Tr. at 69, 70. In addition, she testified that she agreed to move out if Mr. Taub paid her moving expenses and storage fees for six months, and also that Mr. Taub owes her "money for that amount I paid which was illegally collected from me," as well as storage fees she was forced to pay. 10/7 Tr. at 69, 71. Ms. Pota also questioned the authenticity of checks introduced as evidence of payment of storage fees, and asserted that he made the payments by credit card, not by check. 10/8 Tr. at 25-26. And she testified that documents necessary to substantiate her claim were lost when Mr. Taub stored her possessions in exchange for her agreement to move out of 10 Grand Avenue. 10/7 Tr. at 66-67.

Ms. Pota also testified as to her reasons for commencing this involuntary bankruptcy case. She stated that her primary concern in filing this second involuntary petition against Mr. Taub "is that my right is protected," and that "part of the assets should be available when I . . . am in a situation in . . . another court when I have a judgment . . . I want to be able to collect the money." 10/7 Tr. at 33, 39. She stated that although she "[hasn't] sued him yet," and is "working on that," she intends to "proceed . . . legally against [Mr. Taub] . . . in a different court." 10/7 Tr. at 62. And she stated that "I want to be sure that when I bring that case . . . I will be able to collect the money . . . from Mr. Taub . . . for all my damages, my destroyed lost

property, all the damages done to me." 10/7 Tr. at 31, 34, 63. Ms. Pota did not submit a judgment, agreement, or other documentary evidence of a debt owed to her by Mr. Taub.

Ms. Pota testified about advice she received from disability advocates, who counseled "that somehow I should establish my position as a debtor, so when I win that lawsuit then I will be able [to] collect." 10/7 Tr. at 33, 63, 76. Ms. Pota stated that she expects to be assisted by her disability advocates in bringing a future lawsuit against Mr. Taub, but that she has not yet filed it, and that it is "taking time." 10/7 Tr. at 66. And Ms. Pota testified that Mr. Taub "doesn't agree" that he owes her money and disputes her allegations to that effect. 10/7 Tr. at 40, 63.

Finally, Ms. Pota testified with respect to whether it is in her interests for this bankruptcy case to proceed, but her testimony was inconsistent. Ms. Pota testified that "it is against my interest that [Mr. Taub] declares bankruptcy . . . [b]ecause then I cannot collect money from him." 10/7 Tr. at 76-77. At the same time, she testified that the pendency of this bankruptcy case is "protecting my rights to my claim." 10/7 Tr. at 80.

Mr. Taub testified that he did not learn that Ms. Pota believed she had a claim against him until she and others filed the first involuntary petition. 10/8 Tr. at 30. He stated that "[t]he first time I heard it in my life that [I owed you] money was four weeks ago with application my wife filled out." 10/8 Tr. at 56. Mr. Taub disputed that he was a participant in any vandalism, and stated that he "was never . . . inside her apartment," "never" arranged with anyone to vandalize her apartment, and did not know whether her apartment was vandalized. 10/8 Tr. at 15-16. He also disputed that Ms. Pota used the apartment as her residence, and testified that "most of the time, [Ms. Pota] didn't live over there" and that the space she occupied was "[j]ust a warehouse. She kept stuff over there. She didn't sleep over there." 10/8 Tr. at 15.

Mr. Taub also disputed Ms. Pota's statements with respect to his liability for improper charges for storage space. He denied that she paid him $300 a month for the same storage space that he allegedly rented to another person, and testified that "she had the right for 300 square feet," but never asked to use it. 10/8 Tr. at 22. He also denied that he overcharged Ms. Pota for utilities. *Id.*

In addition, Mr. Taub disputed that he could be liable to Ms. Pota for any claim that she might have had, as it would have arisen in 2004 and would be barred by the applicable statute of limitations. 10/8 Tr. at 66. He testified that because the limitations period has expired, Ms. Pota is ineligible to be a petitioning creditor. *Id.*

It is plain from the record that there is a bona fide dispute as to Mr. Taub's liability for any claim that Ms. Pota may have against him, for several reasons. At the outset, Ms. Pota's claim has not been reduced to judgment and has not otherwise been fixed. While she testified to her intention to commence an action against Mr. Taub in another forum to recover damages for Mr. Taub's alleged vandalism and theft, she has not commenced any such proceeding, and such claims will be vigorously contested by Mr. Taub. Ms. Pota also asserts that Mr. Taub is liable to her for amounts arising out of her tenancy at 10 Grand Avenue and the storage of her possessions, but here too, Mr. Taub denies that he is liable for any amounts and asserts that Ms. Pota is liable to him and to Grand Avenue LLC for unpaid rent.

Accordingly, the Court concludes that Ms. Pota has not shown that her claim is not subject to a bona fide dispute as to liability, and has not satisfied this element of eligibility to be a petitioning creditor. A failure to demonstrate that no bona fide dispute exists as to liability is, standing alone, sufficient to disqualify a petitioning creditor and grounds to dismiss this

bankruptcy case.

*Whether there is a bona fide dispute as to amount*

Ms. Pota asserts that as a result of the damage to her property and theft of personal items that Mr. Taub allegedly caused, he owes her $200,000, the amount of her claim in the involuntary petition. Mr. Taub disputes that he owes a debt to Ms. Pota, for any amount. *See* 10/8 Tr. at 36.

Ms. Pota testified that she believes Mr. Taub owes her "exactly" $200,000, "I would say" $200,000, and "at least" $200,000, but she did not produce documentary evidence to support her claim, or reveal how she calculated that amount. 10/7 Tr. at 80. She testified that this figure is "a very conservative estimate according to what I believe can be proven was lost, damaged, stolen," and that this is "the minimum" amount Mr. Taub owed her. 10/7 Tr. at 39. She also testified that "if I go to another court, I can claim a much higher amount" and seek "other damages." 10/7 Tr. at 40, 80.

Ms. Pota testified that she is in the process of collecting proof of the amount of her claim, but had not found what she sought before she filed the involuntary petition. 10/7 Tr. at 66-67. She asserted that Mr. Taub caused her valuables and "documents, photographs [and] receipts" to be "stolen, damaged, [and] destroyed," making it difficult for her to document the amount of her claim. 10/7 Tr. at 66. Ms. Pota stated that the components of her claim included an unliquidated amount she paid in storage fees, "plus the belongings stolen," as well as rent she asserts he was not entitled to collect from her or from the government, and utility charges. 10/7 Tr. at 71. Ms. Pota maintained that records exist to document her claims, but that she does not possess them. 10/7 Tr. at 72. And she stated that Mr. Taub "did not offer to reimburse me" for the amount of

her claim.  10/7 Tr. at 82.

Mr. Taub disputed that he owes any amount to Ms. Pota.  10/8 Tr. at 36.  He testified that he does not owe "one dollar" to Ms. Pota, and that by contrast, she owes rent to 10 Grand Avenue LLC "for 25 months."  10/8 Tr. at 66, 22.  *See* 10/8 Tr. at 65 ("I don't owe her nothing.").  Mr. Taub stated that this unpaid rent amounts to "approximately all together about $80,000, with interest will come out to $100,000."  10/8 Tr. at 36.

Mr. Taub also disputed Ms. Pota's assertions with respect to the costs and circumstances of storing her possessions in connection with her moving out of 10 Grand Avenue.  He stated that as agreed, he paid for six months of storage for her in consideration of her moving out of the premises.  10/8 Tr. at 25-26.

Here too, it is plain from the record that there is a bona fide dispute as to the amount of any claim that Ms. Pota may have against Mr. Taub.  As noted above, Ms. Pota's claim has not been reduced to judgment and has not otherwise been fixed.  She intends to bring an action against Mr. Taub on various theories to recover damages for alleged vandalism and theft, and for amounts allegedly due to her arising out of her tenancy at 10 Grand Avenue and the storage of her possessions, but describes the amounts that she will seek in various ways.  And Mr. Taub denies that he owes any amount to Ms. Pota and asserts that she is liable to him and to Grand Avenue LLC for unpaid rent.

Accordingly, the Court concludes that Ms. Pota has not shown that her claim is not subject to a bona fide dispute as to amount, and has not satisfied this element of eligibility to be a petitioning creditor.  Her failure to demonstrate that no bona fide dispute exists as to amount is

-19-

sufficient to disqualify a petitioning creditor and grounds to dismiss this bankruptcy case.[4]


*Fees and Sanctions Under Bankruptcy Code Section 303(i)*

      Mr. Taub seeks an award of attorneys fees and sanctions under Bankruptcy Code Section

303(i).  Section 303 provides that if the court dismisses an involuntary petition other than on

---

    [4]  In dismissing the First Involuntary Petition, Chief Judge Craig held:

Ms. Pota asserts a $200,000 claim against Mr. Taub arising from alleged
vandalism and property theft.  The Petitioners have not supplied any evidence to
support the allegation that such theft occurred; nor have they come forward with
any calculations justifying the amount of the claim.  Mr. Taub denies that he owes
any debt to Ms. Pota.  The Court concludes that the Petitioners have not met their
burden of coming forward with evidence that Ms. Pota's claim is not subject to a
bona fide dispute as to liability.  As a result, the Court concludes that Ms. Pota is
not an eligible petitioning creditor for the purposes of Bankruptcy Code § 303(b).
. . . The Court concludes that [Ms. Pota's claim is] also subject to a bona fide
dispute as to amount, and thus [she is] not qualified to be petitioning creditor[] for
the purposes of Bankruptcy Code § 303.

*Simon Taub I*, 2010 WL 3504097, at *11-*12.

The Court notes that claim preclusion "forecloses 'successive litigation of the very same
claim, whether or not relitigation of the claim raises the same issues as the earlier suit'"
and issue preclusion "bars 'successive litigation of an issue of fact or law actually
litigated and resolved in a valid court determination essential to the prior judgment,' even
if the issue recurs in the context of a different claim."  *Taylor v. Sturgell*, 553 U.S. 880,
892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).  "By
'preclud[ing] parties from contesting matters that they have had a full and fair
opportunity to litigate,' these two doctrines protect against 'the expense and vexation
attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial
action by minimizing the possibility of inconsistent decisions.'"  *Taylor*, 553 U.S. at 892
(quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

It may be that Chief Judge Craig's conclusions as to Ms. Pota's claim in dismissing the
first involuntary petition have preclusive effect here.  But this Court has not relied on the
doctrines of claim or issue preclusion in determining whether dismissal is required here.

consent of the petitioning creditors and the debtor, and if the debtor does not waive its right to collect fees, then the court may grant judgment "(1) against the petitioners and in favor of the debtor for [] costs or [] a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for [] any damages proximately caused by such filing or [] punitive damages." 11 U.S.C. § 303(i). As one commentator observes:

> Most of the courts determining whether to award fees and costs under 303(i)(1) and damages under 303 (i)(2) to the debtor have adopted a "totality of the circumstances" test, in which certain factors are to be considered. These include (1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and objectives behind the filing of the petition.

2 COLLIER ON BANKRUPTCY ¶ 303.11 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

This request will not be determined in the context of this motion. Rather, as noted above, this Court retains jurisdiction under Bankruptcy Code Section 349 to consider this request at a later time on the basis of an appropriate record.

<u>Conclusion</u>

For the reasons stated herein, and based on the entire record, the Motion to Dismiss will be granted, and this petition will be dismissed. A separate order in conformity with this Memorandum Decision will be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**October 28, 2010**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**